Allan H. STARR, as Executor of the Estate of Elizabeth (Betty) Sampson, individually and on behalf of all others similarly situated, Plaintiff,

v.

GEORGESON SHAREHOLDER, INC., Georgeson Shareholder Communications, Inc., Georgeson Shareholder Securities Corp., and Vodafone Group, PLC, Defendants.

No. 02 Civ. 8921(LLS).

United States District Court, S.D. New York.

Oct. 14, 2003.

Cohen, Milstein, Hausfeld & Toll (Linda P. Nussbaum, of Counsel), New York City, Cohen, Milstein, Hausfeld & Toll (Andrew N. Friedman, Elizabeth S. Finberg, Christopher Branch, of Counsel), Washington, DC, Berger & Montague (H. Laddie Montague, Peter Kahana, Jennifer MacNaughton–Wong, of Counsel), Philadelphia, PA, for Plaintiff.

Thelen Reid & Priest (Eli R. Mattioli, Robert J. Saville, of Counsel), New York City, for Georgeson Defendants.

Sullivan & Cromwell (Stephanie G. Wheeler, Theodore Edelman, Carmelyn P. Malalis, of Counsel), New York City, for Defendant Vodafone.

## OPINION AND ORDER

STANTON, District Judge.

Defendants move pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b) to dismiss the complaint, which asserts violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, as well as state law claims.* For the reasons stated below, the motions are granted.

This class action is brought on behalf of all persons who exchanged their shares of AirTouch Communications Inc. ("AirTouch") for shares of Vodafone pursuant to a post-merger cleanup administered by Georgeson. Plaintiff alleges that the follow-up notices Georgeson sent to shareholders who had not yet tendered their AirTouch shares gave the misleading impression that Georgeson had become the exclusive means for exchange, and failed to inform shareholders they could exchange their shares through Vodafone's exchange agent, Equiserve, or through a different broker, thereby avoiding the allegedly excessive processing fee charged by Georgeson.

### Facts

In 1999, in the proxy statement concerning its merger with AirTouch, Vodafone explained in detail how the AirTouch stockholders would (through Equiserve Limited Partnership as the exchange agent) surrender their shares in exchange for the new Vodafone Air Touch American Depositary Shares and cash, and stated that "Holders of AirTouch common stock will not be liable for any charges in connection with the receipt of Vodafone Air Touch ADSs representing bearer shares." Proxy statement pp. 75–6.

After the merger was completed, Vodafone sent to the AirTouch stockholders a letter explaining their need to return their AirTouch stock certificates to Equiserve as exchange agent, in return for "your new Vodafone Air Touch ADS entitlement" which would be sent within 15 business days of Equiserve's receipt of the items. The letter enclosed a transmittal form and

---

* Plaintiff is voluntarily withdrawing the state claims.

pre-addressed envelope, instructions, a Question and Answer statement including a toll-free telephone number for Equiserve, advice that "your broker or bank will handle the exchange" of AirTouch stock held by the broker, and warning that if the certificates were not returned the Vodafone Air Touch ADSs and accrued dividends would be "subject to escheatment." There was no fee or cost for the exchange.

Thereafter, a Second Notification, similar to the first letter and with similar enclosures, was sent to AirTouch stockholders who had not responded to the first. Again, there was no fee or cost for the exchange.

To those AirTouch stockholders who had not responded to Vodafone's first or second notification, Georgeson sent the first of its two communications at issue in this case, on August 1, 2000, stating in full text:

### IMPORTANT NOTICE FOR HOLDERS OF AIRTOUCH COMMUNICATIONS, INC. COMMON STOCK

August 1, 2000

Dear Shareholder,

Our records show that you still have shares of **AirTouch Communications, Inc. ("AirTouch")**. There is no longer a market for these shares as a result of the merger with **Vodafone Group Plc ("Vodafone")** in July 1999. As a result of the merger you are entitled to five shares of Vodafone (in the form of American Depositary Shares each Vodafone American Depositary Share ("Vodafone ADSs") representing ten Vodafone ordinary shares listed on the New York Stock Exchange as an ADR) plus a cash payment of $9.00 for each **AirTouch** share you hold. Additionally, on September 30, 1999 **Vodafone** declared a capitalization issue which was made on a basis of four new shares for every one share held. On July 28, 2000,

**Vodafone** ADSs traded on the New York Stock Exchange at approximately $44 per ADS. Both the number of **AirTouch** shares you own and Vodafone ADSs plus your cash entitlement are indicated on the attached Claim Card.

At various times, you have been notified to send in your stock certificates(s) in exchange for Vodafone ADSs and the cash distribution. Georgeson Shareholder Communications Inc. has now been retained to assist you in claiming your Vodafone ADSs and cash payment. To claim your Vodafone ADSs, you may complete the Claim Card below and return it along with your stock certificate(s) in the envelope provided. *Even if you have lost your certificate(s), you may still participate in this voluntary program.*

*You may choose to receive your Vodafone ADSs or have them sold on the New York Stock Exchange and receive their cash value.* In order to defray the cost of providing you this service, a processing fee of $3.50 per **Vodafone** ADS due you will be deducted from your proceeds and paid to Georgeson Shareholder Securities Corporation, a registered broker dealer. The Vodafone ADSs and cash to which you are entitled cannot be sent to you until you surrender your old certificate(s). Eventually, if you continue to do nothing, your assets will be turned over to state authorities under the abandoned property laws.

Please read the enclosed material carefully. **There is no benefit in continuing to hold your old shares.** Georgeson Shareholder Communications Inc. is being permitted to administer this notification program from the date of this letter until **September 19, 2000.** If you have questions after reading this material, call **Georgeson Shareholder Communications Inc.,** toll-free, at 1(800) 678–9606 for assistance.

Yours faithfully,
Georgeson Shareholder Communications Inc.

Enclosed with that communication were a claim card with spaces for the shareholder to make her choice to sell or retain the Vodafone ADSs, a short question and answer section, and instructions for the exchange of lost stock certificates.

Georgeson sent a similar communication on September 25, 2000 to those AirTouch stockholders who had still not responded: it stated that the September 15, 2000 price for Vodafone ADSs on the New York Stock Exchange was approximately $37.

### Discussion

■ Succinctly stated, plaintiff argues that by omission the Georgeson communications impliedly misrepresented

... that shares could only be exchanged through Georgeson, that the shareholders were too late to participate in the free share exchange, and that the shares could not be exchanged for free, through a transfer agent previously hired by Vodafone. (Ptf's June 3, 2003 Br. p. 21.)

Plaintiff also complains that the notice "created a false sense of urgency to act." *Id.,* p. 8.

On a fair reading of the Georgeson communications, they do convey a sense of urgency to act. But that is not a misstatement. It grows naturally out of the circumstances set forth in the notice and was appropriate, considering the addressees' failure to respond to two prior requests. Certainly it did not imply that there was not enough time to ask questions: it provided a toll-free telephone number for assistance, and stated that Georgeson would administer the program for over six weeks, which was later extended by the second Georgeson notice until October 30, three months after the initial Georgeson communication.

■ It is clear that the Georgeson communications did not state that shares could be submitted directly to the exchange agent, or by the addressees' broker or bank. It did not state the dollar amount of the fee that would be charged to the individual AirTouch stockholder. But the fact that there were alternative, and cheaper, methods of effecting the exchange did not render the Georgeson statements untruthful. Those statements were accurate as far as they went. Omissions "are only actionable where they cause the statements actually made to be misleading or if disclosure is required by a regulation or statute." *Castillo v. Dean Witter Discover and Co.,* 1998 WL 342050, at *8 (S.D.N.Y. June 25, 1998), citing *Glazer v. Formica Corp.,* 964 F.2d 149, 157 (2d Cir.1992).

■ Furthermore, the availability of the alternative means was already part of the "mix" of information readily available (in fact, mailed directly) to the AirTouch stockholders, who had been informed of the cost-free exchanges available through Equiserve, in Vodafone's two earlier mailings. " 'The securities laws require disclosure of information *that is not otherwise in the public domain,*' not information that has already been publicly—indeed, officially—disclosed by the company." *Hillson Partners Ltd. P'ship v. Adage, Inc.,* 42 F.3d 204, 212 (4th Cir.1994), quoting *Sailors v. Northern States Power Co.,* 4 F.3d 610, 613 (8th Cir.1993) (emphasis as in *Sailors* ) (losses had previously been disclosed in company's annual report and SEC Form 10–K).

■ Equally unsustainable is the claim of inadequate disclosure of the fee Georgeson charged. The claim card sent to the stockholder showed the number of Vodafone ADSs she would receive in the exchange, and the letter stated the processing fee was $3.50 per Vodafone ADS.

Requiring the stockholder to perform the two-minute multiplication to ascertain the fee is not an "omission" for which the law gives redress.

 Any AirTouch stockholder dissatisfied with the Georgeson proposition could with minimal diligence have investigated the already-disclosed alternative means of exchange. "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir.1993).

### Conclusion

The defendants' motions are granted and the complaint is dismissed, with costs to defendants according to law.

So ordered.